# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1952

_____

Daaron McAdoo

*Plaintiff - Appellant*

v.

Sergeant Amy Martin, Hot Spring County Detention Center, in individual and official capacity; Officer Ben Cash, Hot Spring County Detention Center, in individual and official capacity

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: April 11, 2018
Filed: August 7, 2018
_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.
_____

SMITH, Chief Judge.

Daaron McAdoo appeals the district court's judgment which awarded him only nominal and no punitive damages in this prisoner medical needs case. The district court found that the defendants violated McAdoo's Eighth Amendment rights by their deliberate indifference to his serious medical needs while he was in their custody.

However, the court concluded that the Prison Litigation Reform Act (PLRA) precludes McAdoo's recovery of compensatory damages because McAdoo failed to meet 42 U.S.C. § 1997e(e)'s physical injury threshold. We reverse in part and affirm in part.

## I. *Background*

In May 2013, McAdoo was in the custody of the Hot Spring County Detention Center ("the Jail"). He was awaiting transfer to an Arkansas Department of Corrections (ADC) prison. McAdoo and a fellow inmate began fighting. Officer Ben Cash noticed the quarrel and ordered the inmates to cease. McAdoo refused while the other inmate complied. Officer Cash again ordered McAdoo to stop fighting, and after the third ignored command, the officer "grabbed [McAdoo] by the waist, took [McAdoo] to the floor, and placed his knee on [McAdoo's] back." *McAdoo v. Martin*, No. 6:13-CV-06088, 2017 WL 1091348, at *2 (W.D. Ark. Mar. 21, 2017). McAdoo immediately complained of a painful shoulder; Officer Cash subsequently submitted a report stating that McAdoo's shoulder was injured during the takedown to stop the fight.

Sergeant Amy Martin, the Jail's acting administrator, gave permission for McAdoo to be transported to a hospital, and a Jail deputy took McAdoo to the local emergency room approximately three hours after the fight. The treating physician, after diagnosing a dislocated shoulder, prescribed McAdoo ten hydrocodone tablets for pain, to be taken every four hours, as needed. McAdoo also wore a splint to restrain the shoulder. Because Jail policy bans all narcotic drugs, Jail officials refused to fill McAdoo's hydrocodone[1] prescription. Instead, the Jail offered McAdoo—free of charge—his choice of non-prescription pain relievers, to be taken every four to six hours, depending on the dose.

---

[1]Hydrocodone is a narcotic drug. *See Losh v. Fabian*, 592 F.3d 820, 822 (8th Cir. 2010).

McAdoo revisited the hospital two days later for a follow-up appointment. At that time, X-rays revealed "[p]robable avulsion fractures off the humeral head." *Id.* at *4 (alteration in original) (quoting Defs.' Ex. 9 at 3). A computerized tomography (CT) scan indicated the presence of "a 'comminuted fracture involving the superolateral left humeral head with the fracture extending through the greater tuberosity. There were at least three bony fragments in the anterior glenohumeral.'" *Id.* (quoting Defs.' Ex. 9 at 4). According to McAdoo, the examining physician informed him that he needed immediate surgery. McAdoo told his doctor that the over-the-counter pain relievers were inadequate. However, the doctor declined to prescribe hydrocodone to McAdoo because of the Jail's policy against narcotic medications. The doctor then scheduled another follow-up appointment two days later.

The Jail was responsible for inmate medical expenses.[2] Nonetheless, the Jail insisted that McAdoo sign documents stating that he would be liable for all medical expenses resulting from the shoulder injury. McAdoo declined, and the Jail denied his follow-up visit to the hospital. The Jail would not authorize McAdoo's transport to the hospital. The Jail also did not arrange for McAdoo's surgery because McAdoo refused responsibility for the costs. McAdoo remained in the Jail until he was transferred to an ADC facility in June 2013. McAdoo eventually had surgery following his transfer to the ADC prison. In that surgery, "screws were placed to hold his 'arm together.'" *Id.* at *5 (quoting Pl.'s Ex. 5). McAdoo then underwent nine months of physical therapy.

McAdoo filed a pro se 42 U.S.C. § 1983 suit against Sergeant Martin and Officer Cash, alleging failure to protect, excessive force, and denial of medical care in violation of his constitutional rights. The district court held a bench trial in August

---

[2] "Sergeant Martin acknowledged that as long as Plaintiff was in the custody of the [Jail], the detention center was liable for any medical expenses incurred." *Id.*

2016. During trial, McAdoo testified that despite the surgery and physical therapy "his left arm is 'damaged for the rest of [his] life.'" *Id.* (alteration in original). At the trial's conclusion, the court granted judgment as a matter of law to the defendants on McAdoo's failure-to-protect claim. The district court subsequently issued a memorandum opinion in which it concluded that McAdoo's excessive force claim also lacked merit. The court did, however, find in favor of McAdoo on his claim of denial of medical care. It found that the defendants acted with deliberate indifference and failed to provide adequate medical care to McAdoo. The court noted that "[o]pioids are stronger and more effective in providing pain relief," *id.* at *7 n.3, and explained:

> Here, the policy denies prisoners the right to narcotic pain medication even when prescribed by an emergency room physician. Defendants acted pursuant to this policy in failing to provide [McAdoo] his prescription pain medication—hydrocodone. No assessment of [McAdoo's] pain level was attempted. No medical judgment was exercised. Their actions amount to deliberate indifference. Clearly, there was a causal link between the policy and the increased pain [McAdoo] suffered as a result of not receiving the prescribed pain medication.

*Id.* at *7.[3]

Despite finding in his favor, the district court concluded that federal law bars McAdoo from recovery. The court, citing the PLRA, "[r]eluctantly" concluded that McAdoo's "severe pain" does not constitute a showing of a physical injury required

---

[3]Sergeant Martin and Officer Cash have not appealed—and we therefore do not consider—whether the district court properly found them guilty of unconstitutional deliberate indifference for following the Jail's narcotics-free policy without inquiring whether the emergency room physician who prescribed an opioid pain medication was cognizant of, and responsive to, well-recognized opioid addiction issues. This question may be relevant in determining the amount of compensatory damages on remand.

for recovery under the statute. *Id.* at *8. The district court also found that a punitive damages award was not warranted because the "[d]efendants' conduct, while perhaps ill advised, did not exhibit an evil motive or intent or reckless or callous indifference as is required to award punitive damages." *Id.* at *9.

The district court then awarded McAdoo $1 in nominal damages, plus the cost of the filing fee.

## II. *Discussion*

McAdoo challenges the district court's finding that the PLRA precludes him from recovery. He also faults the court's denial of punitive damages. We review "issues of statutory construction de novo." *Royal v. Kautzky*, 375 F.3d 720, 722 (8th Cir.) (citing *Foulk v. Charrier*, 262 F.3d 687, 703 (8th Cir. 2001)). "The district court's determination that it had discretion to award . . . damages is a question of statutory interpretation subject to de novo review." *Braswell v. City of El Dorado*, 187 F.3d 954, 958 (8th Cir. 1999) (citation omitted). We review the district court's denial of punitive damages for abuse of discretion. *Royal*, 375 F.3d at 722 (citing *Trobaugh v. Hall*, 176 F.3d 1087, 1088–89 (8th Cir. 1999)).

### A. *Showing of Physical Injury Under the PLRA*

McAdoo contends that the PLRA does not bar his recovery because his severe pain was a physical injury. He also points out that he sustained a shoulder fracture requiring surgery. Thus, McAdoo asserts that the district court erred in concluding that he failed to meet the PLRA's physical injury requirement. We conclude that because McAdoo's severe pain resulted from an actual physical injury, he met the PLRA's physical injury requirement.

The PLRA mandates that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury

-5-

or the commission of a sexual act." 42 U.S.C. § 1997e(e). "[W]e read section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners." *Royal*, 375 F.3d at 723; *see also Kahle v. Leonard*, 563 F.3d 736, 742 (8th Cir. 2009) ("[S]ection 1997e(e) is merely a limitation on damages . . . ." (alteration in original) (quoting *Munn v. Toney*, 433 F.3d 1087, 1089 (8th Cir. 2006))). Congress enacted the PLRA to reduce the number of frivolous inmate suits. *Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015); *Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003). Thus, to recover more than nominal damages under the statute, a prisoner must allege or prove more than mental or emotional injury. We interpret the PLRA to require more than a de minimis physical injury. *See Smith v. Moody*, 175 F.3d 1025, 1025 (8th Cir. 1999) (unpublished per curiam) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

The parties dispute whether McAdoo's severe pain, standing alone, constitutes a physical injury under the PLRA. However, we need not resolve that question because McAdoo sustained a severe physical injury that meets the PLRA's requirements. Officer Cash's takedown maneuver fractured McAdoo's shoulder, which required surgery. McAdoo's severe pain flowed directly from that physical injury, and despite surgical intervention and physical therapy, the injury has caused some amount of permanent disability. This injury is beyond de minimis. Our prior decisions held that injuries less extensive than McAdoo's shoulder fracture met § 1997e(e)'s requirements. *See*, *e.g.*, *Munn*, 433 F.3d at 1089 (headaches, cramps, nosebleeds, and dizziness); *Pratt v. Corr. Corp. of Am.*, 124 F. App'x 465, 467 (8th Cir. 2005) (per curiam) (30-pound weight loss due to required prison vegetarian meals lacking adequate nutritional values).

Sergeant Martin and Officer Cash do not dispute that McAdoo sustained a shoulder injury that was more than de minimis as the result of Officer Cash's takedown. Rather, they argue that § 1997e(e) requires that the unconstitutional conduct must cause the physical injury. They say that since Officer Cash's takedown

of McAdoo was legitimate and constitutional conduct during the course of his duty, McAdoo's shoulder injury does not qualify as "a showing of physical injury" required by the PLRA. However, Sergeant Martin and Officer Cash cite no authority supporting their proposition.

We find persuasive the Tenth Circuit's conclusion in *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000). There, the plaintiff, an inmate, woke up late at night sweating and felt unwell. *Id.* at 1207. He alerted the correction officers, complaining of chest pain; he informed the officers that he "might be having a heart attack." *Id.* at 1208. In response, one officer admonished the inmate to wait until 6 a.m., and the sergeant on duty told the inmate, "Just don't die on my shift. It's too much paper work." *Id.* (citation omitted). The inmate was not treated until hours later, and medical tests confirmed that the inmate suffered a major heart attack. *Id.* at 1208–09. The inmate sued under § 1983, but the district court granted summary judgment to the sergeant. *Id.* at 1209.

The Tenth Circuit reversed the district court, concluding that the sergeant was deliberately indifferent to the inmate's serious medical needs because the officer "was informed that [the inmate] might be having a heart attack, and that he was present when [the inmate] displayed symptoms consistent with a heart attack. [The officer] allegedly refused to drive [the inmate] to the hospital, and told [the inmate] not to die on his shift." *Id.* at 1210. In reversing, the *Sealock* court noted that it was

> aware of the limitation on actions by prisoners for mental and emotional injuries without a prior showing of physical injury. Assuming without deciding that physical pain constitutes "mental or emotional injury" within the meaning of the statute, appellant satisfies the statutory requirement because he has made a prior showing of physical injury, i.e. his heart attack.

*Id.* at 1210 n.6 (citing 42 U.S.C. § 1997e(e)).

In *Sealock*, the defendants did not cause the plaintiff's heart attack. Rather, as is the case here, their constitutional fault was in their deliberate indifference to the inmate's serious medical needs that came *after* the physical injury. We agree with the Tenth Circuit and hold that the PLRA's gatekeeper function against frivolous suits does not require a prison inmate to make a showing of a physical injury *caused* by an unconstitutional act. Rather, in the Eighth Amendment context, in order to recover compensatory damages, the PLRA requires a showing of harm caused by some unconstitutional conduct that amounted to deliberate indifference *and* an accompanying showing of physical injury. The PLRA does not say whether the unconstitutional conduct must cause the physical injury. With a showing of a physical injury, § 1997e(e) permits recovery for the harm—physical or otherwise—caused by the demonstrated unconstitutional conduct.

We therefore reverse and remand to the district court. On remand, we instruct the district court to calculate compensatory damages that result from the pain differential, if any, that McAdoo experienced from having to take non-prescription pain relievers instead of the ten prescribed hydrocodone tablets.

### B. *Punitive Damages Award*

McAdoo also contends that the district court erred by not awarding punitive damages. "Punitive damages may be awarded under 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir. 2011) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "[P]rov[ing] reckless indifference . . . requires evidence that the defendant acted 'in the face of a perceived risk that [his or her] actions [would] violate federal law.'" *Swipies v. Kofka*, 419 F.3d 709, 718 (8th Cir. 2005) (second and third alterations in original) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)). Even when reckless indifference is shown, the district court has "'discretionary moral judgment' reviewed only for an abuse of discretion, a 'highly

deferential standard of review.'" *Schaub*, 638 F.3d at 923 (citing *Royal*, 375 F.3d at 724). "[W]e empower a district court with enough discretion to make [this] proper judgment call without fear of inappropriate appellate intervention." *Royal*, 375 F.3d at 724 (citations omitted).

Here, the district court concluded after a bench trial that the "[d]efendants' conduct, while perhaps ill advised, did not exhibit an evil motive or intent or reckless or callous indifference as is required to award punitive damages. Rather, the Defendants were merely conforming their conduct to a jail policy; a policy that had apparently not been challenged as unconstitutional previously." *McAdoo*, 2017 WL 1091348, at *9. McAdoo disagrees, and he argues that the district court erred in its conclusion because Sergeant Martin and Officer Cash knew or should have known that they were violating McAdoo's federal rights by blatantly disregarding McAdoo's well-established constitutional right to adequate medical care. We disagree.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain[.]' . . . This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (footnotes omitted) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). It cannot be said that by following the Jail's narcotics-free policy, Sergeant Martin and Officer Cash inflicted unnecessary and wanton pain on McAdoo. And, the officers could not have known that by following the Jail's policy to ban all narcotics in the midst of an opioid epidemic—a policy not challenged as unconstitutional—they might be disregarding McAdoo's constitutional right to adequate medical care. We find no abuse of discretion by the district court in its denial of a punitive damages award to McAdoo.

## III. *Conclusion*

We reverse the district court in part and affirm in part, and we remand for further proceedings consistent with this opinion.

_____